**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Dated: 03:37 PM August 19, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| JEFFREY E. FLECK AND | ) | CASE NO. 09-65322 |
| LINDA L. FLECK, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

Toby L. Rosen, the chapter 13 trustee ("Trustee") filed a modification to increase Debtors' plan payments $1,000.00 per month based on an alleged postpetition increase in income. Debtors oppose the increase. The court held hearings related to the issue on May 22, 2013 and July 10, 2013. During the July hearing, the court ordered the parties to submit legal memoranda in support of their positions, which both have done.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core matter.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## BACKGROUND

Debtors commenced a joint chapter 13 bankruptcy case on December 29, 2009. They are above-median debtors. At the time of filing, Mr. Fleck was a three decade employee with Republic Storage Systems. His gross earnings were just under $31,000.00 per year. His take home pay was $1,630.00 per month. He also received a pension income of $930.00 per month. Mrs. Fleck worked for Lock Builders. Her annual gross pay was $37,382.00 per year. She brought home an average of $2,327.00 per month. Under these figures, Debtors' annual pre-tax income was $79,542.00. Their net monthly income was $4,887.00.

At the time of filing, Debtors' daughter and granddaughter were living with them and Debtors claimed them as dependents on their tax returns. Their means test and their schedule I and J were based on a household size of four.

The court confirmed Debtors' chapter 13 plan on May 13, 2010. Per an agreed order entered on the day of confirmation, Debtors' payments were $770.00 per month. The plan proposed a fifty percent dividend to unsecured creditors. Debtors maintained their mortgage payment and a car payment directly. No priority debt was scheduled. Consequently, Debtors' payments were almost exclusively for the benefit of unsecured creditors.

In June 2011, Trustee sought to modify Debtors' plan due to a "significant increase in income" per their 2010 tax returns. Debtors' objection was overruled and the plan payments increased from $770.00 per month to $940.00 per month.

In March 2012, Trustee sought another modification. This time she proposed to increase the payment to $1,350.00, this time due to increased income on Debtors 2011 tax returns. Debtors objected and the parties reached an agreed order, entered on April 18, 2012. The plan payments remained steady at $940.00 but Debtors agreed to turnover any future tax refunds in excess of $1,000.00.

In March 2013, Trustee filed the instant modification. Based on her contention that Debtors' income again increased, per their 2012 tax returns, she now seeks to increase the plan payment to $1,940.00. Debtors filed an objection to the modification on April 11, 2013.

Debtors' amended Schedule I, filed on June 18, 2013, does show an increase in income. Mr. Fleck now grosses approximately $35,360.00 annually. Mrs. Fleck's gross income has also increased and she now earns $49,920.00 annually. With Mr. Fleck's pension income, Debtors' before tax income is now upward of $96,000.00. Their monthly take home pay is $5,834.00, an increase of $947.00 per month. Schedule I indicates that Debtors' daughter and granddaughter continue to reside with them. Schedule I shows no income from the daughter flowing into the household. The expenses on Schedule J are based on a four person household.

When the case was filed, Debtors' monthly expenses were $4,312.00. Under Debtors' amended Schedule J, filed on May 10, 2013, their expenses are now $4,635.00, an increase of

2

$323.00.  The following chart shows where the changes occurred:

| Expense | Amount at filing | Amount per am. Sch. J | Difference |
|---|---|---|---|
| Mortgage | $503.14 | $535.00 | +$31.86 |
| Electricity/heat | $316.00 | $400.00 | +$84.00 |
| Water and sewer | $ 35.00 | $ 45.00 | +$10.00 |
| Telephone | $78.00 | -0- | - $78.00 |
| Cable, cell phone, internet | $125.00 | $275.00 | +$150.00 |
| Home maintenance | $250.00 | $300.00 | +$50.00 |
| Medical/dental | $150.00 | $200.00 | +$50.00 |
| Transportation | $425.00 | $450.00 | +$25.00 |
| TOTAL | | | +$322.86 |

Debtors' unchanged expenses include $950.00 per month for food, $200.00 per month for clothing, $40.00 per month for laundry/dry cleaning, $400.00 per month for recreation, $50.00 per month in charitable contributions, and $200.00 per month in personal expenses (grooming, haircuts, etc.).

## **DISCUSSION**

Modifications are governed by 11 U.S.C. § 1329 and Federal Rule of Bankruptcy Procedure 3015.  Although not directly stated, the court understands Trustee's modification to be premised on § 1329(a) because she seeks to increase plan payments which will, in turn, increase the distribution to unsecured creditors.

Trustee argues that an increase is warranted because Debtors' income has increased since filing.  Debtors do not dispute an increase, but they do deny that it was "significant."  According to Debtors, their tax returns and amended schedules show no more than a seven percent increase between 2011 and 2012.  In 2011, their reported income on their tax return was $91,335.00 and in 2012 it was $97,740.00.  Contrary to Debtors' position, the court does not find a $533.75 monthly gross increase insignificant.

Debtors' position also fails to address the fact that, since filing, Debtors' income has increased $18,000.00 annually.  The court recognizes that part of this increase was captured in the 2011 agreed order on Trustee's modification.  But that increase does not account for the full rise in income since filing.

Additionally, Debtors' brief indicates that their daughter, who resides with them, had income for some period in 2012 and claimed their granddaughter on her personal tax return.  Not only has Debtors' income increased, but there was also additional household income of an unknown amount.

Debtors argue for rejection of any challenges to their household size of four.  They

3

contend that since they were providing for their daughter and granddaughter when they filed the case, and when the plan was confirmed, and Trustee should not be able to now challenge their continued support of their daughter and granddaughter. This argument misunderstands Trustee's position. Trustee's argument is based on the Debtors' *own* changes to their tax filing status.

When Debtors filed this case, they were claiming their daughter and granddaughter as dependents. They claimed them as dependents in 2010 and 2011. In 2010, their federal tax refund was $2,558.00. In 2011, it was $6,420.00. Clearly, at Debtors' income level, the ability to claim their daughter and granddaughter are material to receipt of any tax refund. In 2012, they signed an agreed order with Trustee stating they would turn over any tax refunds in excess of $1,000.00 to the Trustee. Suddenly, in 2012, the year Debtors are supposed to contribute tax refunds over $1,000.00 to their plan, Debtors stop claiming their daughter and granddaughter as dependents for tax purposes. They filed separate returns under the "married, filing separately" status. Their daughter, their alleged dependent for Schedule J purposes, who contributes no income to the household, filed her own return and claimed Debtors' granddaughter. However, for bankruptcy purposes, Debtors continue to maintain they have a household size of four in order to take full advantage of the standard expense deductions for a household of four. These two positions are incongruent and reek of bad faith.

In adopting the "economic unit" approach for determining household size, the Fourth Circuit explained that the concept of disposable income

> is based, in part, on the debtor's "current monthly income,"
> a term that is definied in 11 U.S.C. § 101(10A) to mean
> "the average monthly income from *all* sources that the debtor
> receives (or in a joint case the debtor and the debtor's spouse
> receive) . . . ." Since the "plus" side of the equation would
> include financial contributions from various outside sources,
> it is also logical to include the amount deducted therefrom the
> financial liability of the debtor for the members of the debtor's
> "household" on the opposing side of the equation.

Johnson v. Zimmer, 686 F.3d 224, 237 (4th Cir. 2012). This understanding recognizes there must be a balance in the approach used to determine household size, one that considers both the money coming in, on the "plus" side of the equation, as well as the money going out, on the "minus" side of the equation. Debtors fail to achieve this balance. Since they are not claiming their daughter and granddaughter, they are losing income in the form of a tax return. They are not compensating for the loss by either including the daughter's income or reducing their household allowances to the household size that is consistent with their tax filings.

The court finds no need to go further in its review of this case. Debtors' objection to Trustee's modification is not well-taken and it will be overruled by separate order.

#   #   #

4

**Service List:**

Mitchell A Machan
3810 Tuscarawas St W
Canton, OH 44708

Toby L Rosen, Trustee
400 Tuscarawas St W
Canton, OH 44702